UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLIFTON W. HOWARD, SR.     CIVIL ACTION NO. 04-2426

versus     JUDGE HICKS
**REFERRED TO:**
COMMISSIONER OF THE SOCIAL     **MAGISTRATE JUDGE HORNSBY**
SECURITY ADMINISTRATION

## MEMORANDUM RULING

**Introduction**

Clifton Howard ("Plaintiff") has filed numerous applications for SSI. This case arises from an application he filed that asserts disability beginning October 27, 2001 based on back problems, osteoarthritis, leg pain and mental problems. Plaintiff, who has a seventh grade education and past work experience that includes employment as a delivery man, was 47 years old when ALJ Larry Butler denied his claim. The Appeals Council denied a request for review (Tr. 263), and Plaintiff filed this civil action seeking the limited judicial review permitted by 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the case was referred to the undersigned for decision and entry of judgment.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 416.920 and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff had done some work activity after the alleged onset date, but the work was not considered substantial gainful activity as defined by the regulations (step one). He next found that Plaintiff did not have a severe mental impairment but did have back pain that is severe (step two) but not severe enough to meet or equal a listing (step three). He then determined that Plaintiff had the residual functional capacity ("RFC") to perform the demands of light work. He ended the analysis at step four when he found that Plaintiff's RFC permitted him to perform his past relevant work as a delivery man as he actually performed the job. (Tr. 270-75).

**Past Relevant Work**

Plaintiff's first issue on appeal complains that his past work as a delivery man does not meet the definition of past relevant work. The regulations define past relevant work as

"work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). Plaintiff argues that he did not earn enough at his past job to qualify as substantial gainful activity and, therefore, past relevant work.

Plaintiff reported on his Disability Report that he worked as a "driver/delivery" for a bank from January 1998 to July 1998. He reported that he earned $5.25 per hour and worked six hours per day, five days a week. Tr. 57. On another occasion, Plaintiff completed the identical form and reported that he worked as a driver for a bank during 1998 (with no further specification) for $5.35 per hour and worked eight hours per day, five days a week. Tr. 321.

The governing regulation indicates that earnings in 1998 that averaged more than $500 per month qualify as substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(i). Subsection (b)(3) describes earnings that will ordinarily show a person has *not* engaged in substantial gainful activity. That amount for 1998 is a monthly average of less than $300. If the average monthly earning is somewhere between $300 and $500, the regulations say that the agency will generally consider other information in addition to earnings. Section 416.974(b)(6).

Plaintiff points to a report that he had F.I.C.A. earnings in 1998 totaling $3,671.38. Tr. 317. If that amount is divided by 12, it yields an average monthly income of approximately $306. Plaintiff argues that additional information was, therefore, required.

Plaintiff himself, however, clarified that he worked only from January to July of that year. Dividing the total earnings by the seven months that Plaintiff worked indicates an average monthly earning of approximately $524. If one calculates the earnings based on the hourly rate of pay and hours reportedly worked, the figure is even higher. Plaintiff has not cited any authority for the proposition that any earnings in a year must be averaged over 12 months rather than the months actually worked. Accordingly, there is no error on this point.

**Opinion of Treating Physician**

The ALJ found that Plaintiff did not have a severe mental impairment. He based that conclusion on the reports of two consultative psychologists, which he favored over a contrary report from a treating psychiatrist. Plaintiff claims this was error.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to

Plaintiff himself, however, clarified that he worked only from January to July of that year. Dividing the total earnings by the seven months that Plaintiff worked indicates an average monthly earning of approximately $524. If one calculates the earnings based on the hourly rate of pay and hours reportedly worked, the figure is even higher. Plaintiff has not cited any authority for the proposition that any earnings in a year must be averaged over 12 months rather than the months actually worked. Accordingly, there is no error on this point.

**Opinion of Treating Physician**

The ALJ found that Plaintiff did not have a severe mental impairment. He based that conclusion on the reports of two consultative psychologists, which he favored over a contrary report from a treating psychiatrist. Plaintiff claims this was error.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to

determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

Clinical psychologist Mark Dulle, Ph.D., examined Plaintiff in April 2002. Plaintiff reported that he was depressed, had failing memory, heard voices, believed people were trying to harm him, and that he had a history of degenerative joint disease. Plaintiff had a difficult time recalling specifics of his mental health treatment and said it had "been awhile" since he sought help. He said he could once understand the voices he heard, but he could no longer make out what they are saying. He also reported visual hallucinations. Dr. Dulle reported that Plaintiff responded only in vague terms and elaborated what he hoped to convey while "forgetting" most everything else. Plaintiff claimed to have hunted his father "like an animal" in an effort to kill him. He claimed that he was paranoid, frequently looking out the window during the examination. Dr. Dulle concluded that Plaintiff's presentation "did not appear authentic" and that he believed Plaintiff "functions at a higher level than he was willing to demonstrate today." The diagnosis included personality disorder but also malingering. Tr. 384-86.

Clinical psychologist Susan Tucker, Ph.D., examined Plaintiff in January 2004. Plaintiff's cooperation was inconsistent. He did not finish the personality assessment. He stopped half way through and said he was in too much pain to complete the test and had to leave. He demonstrated sound memory on some details but often "forgot" others. The level of expressiveness Plaintiff displayed was reported as "somewhat histrionic." Dr. Tucker

diagnosed depression and personality disorder but also offered "consideration of malingering in [Plaintiff]'s psychological presentation as well as his physical concerns due to secondary gain." Tr. 434-36.

On the other hand, Dr. Jody Meek found Plaintiff's claims credible. She wrote in May 2003 that she had been treating Plaintiff since February 2001 and that Plaintiff had been very faithful in his treatment at the Mansfield Mental Health Clinic. She offered a diagnosis of psychoaffective disorder with symptoms that include auditory hallucinations of derogatory messages, visual hallucinations of dead people and believing that people are watching him on the street. Plaintiff was also said to have severe depression symptoms such as sad moods, crying spells and occasional suicidal thoughts. Dr. Meek said that Plaintiff's psychotic complaints had been observed by the clinic rather than mere reports from Plaintiff. She wrote: "I strongly believe that these symptoms are real and very debilitating to him." She went on to detail how Plaintiff had been treated with high doses of anti-psychotic medications with "some success" but without overcoming the hallucinations. She also was giving Plaintiff anti-depressant medication. She opined that Plaintiff "certainly meets the criteria for disability." Tr. 429-30. The record contains other reports from Dr. Meek, many of which are cited in Plaintiff's brief, but this letter summarizes her opinions.

The ALJ reviewed the reports from Drs. Dulle, Meek and Tucker. He relied on the opinions of the consultative physicians that Plaintiff was a malingerer and that his mental condition caused only a slight limitation in his ability to perform work activity. He

diagnosed depression and personality disorder but also offered "consideration of malingering in [Plaintiff]'s psychological presentation as well as his physical concerns due to secondary gain." Tr. 434-36.

On the other hand, Dr. Jody Meek found Plaintiff's claims credible. She wrote in May 2003 that she had been treating Plaintiff since February 2001 and that Plaintiff had been very faithful in his treatment at the Mansfield Mental Health Clinic. She offered a diagnosis of psychoaffective disorder with symptoms that include auditory hallucinations of derogatory messages, visual hallucinations of dead people and believing that people are watching him on the street. Plaintiff was also said to have severe depression symptoms such as sad moods, crying spells and occasional suicidal thoughts. Dr. Meek said that Plaintiff's psychotic complaints had been observed by the clinic rather than mere reports from Plaintiff. She wrote: "I strongly believe that these symptoms are real and very debilitating to him." She went on to detail how Plaintiff had been treated with high doses of anti-psychotic medications with "some success" but without overcoming the hallucinations. She also was giving Plaintiff anti-depressant medication. She opined that Plaintiff "certainly meets the criteria for disability." Tr. 429-30. The record contains other reports from Dr. Meek, many of which are cited in Plaintiff's brief, but this letter summarizes her opinions.

The ALJ reviewed the reports from Drs. Dulle, Meek and Tucker. He relied on the opinions of the consultative physicians that Plaintiff was a malingerer and that his mental condition caused only a slight limitation in his ability to perform work activity. He

acknowledged Dr. Meek's opinion that Plaintiff meets the criteria for disability, but he found that Dr. Meek's limitations exceeded the objective medical findings and was not supported by the totality of the evidence in the record.

Dr. Meek's opinion is explained in detail and with conviction. Her treating physician status means that ordinarily her opinion would be accorded considerable weight. But in this case, there is competing first-hand evidence consisting of the opinions of two mental health professionals that Plaintiff is exaggerating. All three opinions are fully explained and persuasive. A reasonable person could elect to favor either view, but the ALJ weighed the evidence and determined that the reports from the consultative examiners were more persuasive. That decision was reasonable and adequately explained in his decision, so the court will not second guess him on that point.

**Conclusion**

Judicial relief is not appropriate on either of the issues urged by Plaintiff. A judgment affirming the Commissioner's decision will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 20th day of March, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE